UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ANTHONY GRIMA,

   Petitioner,

                 CASE NO. 12-11846

v.

                 HONORABLE JOHN CORBETT O'MEARA

CAROL R. HOWES,

   Respondent.
_____/

**OPINION AND ORDER
DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, BUT
<u>GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>**

  Petitioner John Anthony Grima has filed a *pro se* application for the writ of habeas corpus challenging his Oakland County convictions for criminal sexual conduct. Petitioner is serving a sentence of fifteen to thirty years in prison for third-degree criminal sexual conduct and twelve to thirty years in prison for second-degree criminal sexual conduct. He claims that (1) the trial court abused its discretion when denying his post-conviction motion for relief from judgment, (2) he was deprived of effective assistance of counsel, and (3) his no-contest plea was invalid. Respondent Carol R. Howes urges the Court to deny the petition. The Court finds that Petitioner's claims lack substantive merit. Accordingly, the habeas petition is denied. A procedural history and analysis follow.

## I. BACKGROUND

  Petitioner was charged in Oakland County, Michigan with two counts of first-

degree criminal sexual conduct and one count of second-degree criminal sexual conduct. The charges arose from allegations that Petitioner fondled his stepdaughter's breasts, digitally penetrated her vagina, and performed oral sex on her when she was fifteen years old. On June 15, 2007, Petitioner pleaded no contest in Oakland County Circuit Court to one count of second-degree criminal sexual conduct, *see* Mich. Comp. Laws § 750.520c(1)(b) (sexual contact with a person at least thirteen years old, but less than sixteen years old), and to an added count of third-degree criminal sexual conduct, *see* Mich. Comp. Laws § 750.520d(1)(a) (sexual penetration of a person at least thirteen years old, but less than sixteen years old). In return, the prosecutor dismissed the two counts of first-degree criminal sexual conduct.

There was no sentencing agreement, and on July 3, 2007, the trial court sentenced Petitioner as a habitual offender to imprisonment for twelve to thirty years for second-degree criminal sexual conduct and fifteen to thirty years for third-degree criminal sexual conduct. The sentences were ordered to run concurrently.

The trial court subsequently appointed counsel to represent Petitioner in post-conviction proceedings. The attorney moved to withdraw as counsel after concluding that there was no valid legal basis to challenge Petitioner's plea or sentence in either a post-conviction motion or in an application for leave to appeal.

Petitioner then filed a *pro se* motion to withdraw his plea. He alleged that he was bipolar, that he had been diagnosed with attention deficit disorder, and that he was being treated in a community mental health program. He claimed that, at the time of his plea, he suffered from extreme duress, mental anguish, and sleep deprivation and that he was under the influence of anti-psychotic medications. He also claimed that, prior to

his plea, his attorney told him the prosecutor would withdraw the offer within ten minutes if he did not accept the offer. He maintained that he did not have adequate time to consider his options before accepting the prosecutor's plea offer and, therefore, he was forced into pleading no contest. The trial court found no merit in Petitioner's claims and denied Petitioner's motion to withdraw his plea after concluding that Petitioner's plea was knowing, understanding, and voluntary. The court stated that Petitioner had not demonstrated a miscarriage of justice. *See People v. Grima*, No. 07-214270-FC, Opinion and Order (Oakland Cnty. Cir. Ct. May 16, 2008.)

In a *pro se* application for leave to appeal the trial court's decision, Petitioner argued that the trial court abused its discretion when denying his motion to withdraw his plea. He claimed that, at his plea, he suffered from extreme mental duress, mental anguish, and sleep deprivation and was under the influence of antipsychotic medications. The Michigan Court of Appeals denied Petitioner's application "for lack of merit in the grounds presented." *People v. Grima*, No. 291978 (Mich. Ct. App. Sept. 10, 2009). Petitioner did not appeal that order to the Michigan Supreme Court.

On or about May 24, 2010, Petitioner filed a motion for relief from judgment through counsel. He asserted that his trial attorney was ineffective and that his no-contest plea was invalid because it was not based on accurate information and was not knowingly and voluntarily made. The trial judge's successor denied the motion on the ground that Petitioner had not shown "good cause" for the failure to raise his claims on appeal and "actual prejudice" from the alleged irregularities supporting his claims for relief. *People v. Grima*, No. 07-214270-FC, Opinion and Order (Oakland Cnty. Cir. Ct. Dec. 2, 2010).

3

In an application for leave to appeal the trial court's decision, Petitioner argued that the trial court abused its discretion by denying his motion for relief from judgment. He maintained that his trial attorney was ineffective and that his plea was invalid because it was not based on accurate information and was not knowing or voluntary. The Michigan Court of Appeals denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Grima*, No. 301886 (Mich. Ct. App. Aug. 17, 2011).[1] On March 5, 2012, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Grima*, 491 Mich. 852; 808 N.W.2d 790 (2012) (table).

On April 25, 2012, Petitioner filed his habeas corpus petition. He claims that: (1)

---

[1] Pursuant to Michigan Court Rule 6.508(D), state courts may not grant relief from judgment if the motion

> alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence . . . unless the defendant demonstrates
>
> > (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
> >
> > (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
> >
> > > . . . .
> > >
> > > (ii) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;

Mich. Ct. Rule 6.508(D)(3).

4

the trial court abused its discretion when it denied his motion for relief from judgment on that basis that he had not shown "good cause" for raising his claims on appeal; (2) trial counsel rendered ineffective assistance; and (3) his guilty plea was involuntary. Respondent argues that Petitioner's second and third claims are procedurally defaulted and that the Court should deny relief on the merits if it overlooks the default.

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). It "is not a jurisdictional matter," *id.*, and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003). Petitioner's claims do not warrant habeas relief, and a determination of whether his claims are procedurally defaulted under a cause-and-prejudice analysis "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). The Court therefore "cut[s] to the merits here," *id.*, using the following standard of review.

## II. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable

5

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.' " *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations omitted); *see also Lovins v. Parker*, 712 F.3d 283, 301 (6th Cir. 2013) (stating that "the AEDPA standard of review is a high bar"). This deferential standard of review, however, "applies only to any claim that was adjudicated on the merits in State court proceedings." *Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007) (end citation and quotation marks omitted).

Petitioner raised his habeas claims in his motion for relief from judgment and in his subsequent appeals from the trial court's decision on his motion. None of the state courts addressed the merits of his claims. Instead, they denied relief under Michigan Court Rule 6.508(D), which authorizes courts to deny relief if the movant could have raised his claims on appeal and did not show cause for failing to do so and resulting prejudice. When, as here, the state courts did not rule on the merits of a claim, courts

must apply a *de novo* standard of review. *Pinchon v. Myers*, 615 F.3d 631, 639 (6th Cir. 2010) (citing *Nields v. Bradshaw*, 482 F.3d at 450). "That independent review, however, is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).

### III.  ANALYSIS

### A.  "Good Cause"

The first habeas claim alleges that the state trial court abused its discretion when it denied Petitioner's motion for relief from judgment on the basis that Petitioner had not shown "good cause" for failing to raise his claims on direct appeal. Petitioner claims that his trial and appellate attorneys were "cause" for his failure to raise his claims sooner and that the trial court erred by denying his post-conviction motion without holding a hearing on the motion.

This claim lacks merit because the United States Court of Appeals for the Sixth Circuit

> has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002). [C]laims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); see also *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if

> resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247.  "Though the *ultimate* goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] . . . is not in any way related to the confinement."  *Id.* at 248.  Accordingly, [the Sixth Circuit has] held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration."  *Id.* at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings can not [ sic ] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (italics in original).  Furthermore, as explained more recently in *Good v. Berghuis*, 729 F.3d 636 (6th Cir. 2013),

> it would be an unusual intrusion for federal courts to second-guess state procedures for resolving motions once they have been presented.  States are independent sovereigns, and the federal government generally speaking should respect their choices about how to adjudicate disputes.
>
> . . . [Federal courts] must instead presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim – resolving some motions with neither an evidentiary hearing nor an oral argument, some with an oral argument alone, some with both.

*Id.* at 639.  The Court therefore denies relief on Petitioner's claim concerning the state court's failure to hold an evidentiary hearing and the court's denial of Petitioner's post-conviction motion.

## B. Alleged Ineffective Assistance

The second habeas claim alleges that Petitioner's Sixth Amendment right to effective assistance of counsel was violated by his trial attorney's omissions.

8

### 1. Alleged Errors in the Sentencing Information Report

In the heading for Petitioner's second claim, he contends, among other things, that his trial attorney should have addressed errors in the sentencing information report. In his discussion of the claim, however, Petitioner says nothing about errors in the sentencing information report, and in an affidavit dated May 12, 2010, Petitioner merely avers, without any discussion, that he believes there are several errors in the sentencing information report. *See* ECF No. 7, Affidavit of John Anthony Grima. Thus, that portion of Petitioner's claim is abandoned.

Even if the Court were to assume that Petitioner is raising the same claims that he presented to the state courts, the Court would have to deny relief. An attorney's failure to object to an error in the calculation of sentencing guidelines in a presentence report can constitute deficient performance. *Howard v. United States*, __ U.S.__, __, No. 13-1602, 2014 WL 642844, at *5 (6th Cir. Feb. 20, 2014). But, as the following discussion demonstrates, counsel's alleged errors were not sufficient to offend the Sixth Amendment.

#### a. Prior Record Variable (PRV) 2

Petitioner alleged in his state-court motion for relief from judgment that PRV 2 was improperly scored at twenty points. PRV 2 measures prior low severity felony convictions. Mich. Comp. Laws § 777.52. Twenty points is appropriate if "[t]he offender has 3 prior low severity felony convictions." Mich. Comp Laws § 777.52(1)(b). A "prior low severity felony conviction" includes, among other things, a felony in another state. Mich. Comp. Laws § 777.52(2)(b).

Petitioner contends that PRV 2 should have been scored at ten points, not twenty

points, because one of his prior convictions was a misdemeanor. The disputed conviction, however, was a California conviction for infliction of corporal injury on a spouse. Because the crime is a felony, Cal. Penal Code § 273.5(a), it was properly counted when assessing PRV 2 of the Michigan sentencing guidelines. Defense counsel, therefore, was not ineffective for failing to object to the score of twenty points for PRV 2.

### b. PRV 6

Petitioner alleges next that PRV 6 was improperly scored at ten points. PRV 6 assesses the defendant's relationship to the criminal justice system. Mich. Comp. Laws § 777.56(1). This PRV should be scored with ten points if the offender was "on parole, probation, or delayed sentence status or on bond awaiting adjudication or sentencing for a felony" when he committed the offense for which he is being sentenced. Mich. Comp. Laws § 777.56(1)(c).

Petitioner claims that he was discharged from parole in December of 2005, not in January 2006, when the crimes in this case were committed and, therefore, he should not have received any points for PRV 6. Petitioner's attorney, however, admitted at the plea proceeding that the offense occurred in January of 2006 (Plea Tr., 10, June 15, 2007), and Petitioner admitted in his motion for relief from judgment that his parole was extended to provide time for payment of costs. Thus, PRV 6 was properly scored at ten points, and defense counsel was not ineffective for failing to object to the score.

### c. Offense Variable (OV) 10

Petitioner alleged in his motion for relief from judgment that OV 10 was

improperly scored at fifteen points. OV 10 "is exploitation of a vulnerable victim." Mich. Comp. Laws § 777.40(1). This offense variable should be scored fifteen points if "[p]redatory conduct was involved." Mich. Comp. Laws § 777.40(1)(a). "Predatory conduct" is "preoffense conduct directed at a victim for the primary purpose of victimization." Mich. Comp. Laws § 777.40(3)(a).

Petitioner asserts that a score of fifteen points is overreaching, as there is no evidence that he engaged in any type of "pre-offense conduct for the primary purpose of victimization." According to the trial court, however, the victim reported that the sexual abuse began when she was fourteen years old and that she was physically and sexually abused. She also claimed that Petitioner had threatened to kill her and her mother if she disclosed the abuse. The trial court stated at the sentencing that the victim was a vulnerable teenager over whom Petitioner had a position of authority. The court also said, "This victim had been previously molested and he [Petitioner] knew it. This all proves that he is a sexual predator who needs to be separated from society." (Sentence Tr., 5, July 3, 2007.)

Petitioner's abuse of the victim when she was fourteen years old and his threat to kill the victim and her mother constituted "preoffense conduct directed at a victim for the primary purpose of victimization." The record therefore supports a score of fifteen points for OV 10, and defense counsel was not ineffective for failing to object to the score.

### 2. Alleged Failure to Investigate

Petitioner's other claims about his trial attorney allege that the attorney should have fully investigated the facts and ensured that Petitioner was mentally competent to

11

plead no contest. According to Petitioner, if his attorney had procured Petitioner's medical history and investigated Petitioner's background, he would have discovered that Petitioner had a history of psychiatric problems and that he was addicted to alcohol and prescription painkillers. Petitioner maintains that defense counsel could have used these facts as a defense to criminal culpability and to show that Petitioner did not understand the legal process and was not competent to plead no contest. Petitioner claims that, had his attorney explained the consequences of the mental health issues to him and the potential defenses, he would have elected to take another course of action instead of pleading no contest.

### a. Clearly Established Federal Law

"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, __ U.S. __, __, 132 S. Ct. 1376, 1387 (2012). But the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to challenges to guilty pleas and, by extension, no-contest pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). *Strickland v. Washington*, requires showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. at 687. In the context of a guilty or no-contest plea, a deficient performance is one that fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. at 56-57.

The "prejudice" prong of the two-part *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea

process." *Id*. at 59. To satisfy this requirement, Petitioner "must show [that] the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1384. Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded no contest and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. at 59.

### b. Application

Petitioner implies that he was not competent to plead no contest and that he was not criminally culpable due to his mental problems. He blames his trial attorney for not investigating his mental health issues before allowing him to plead no contest.

"A criminal defendant may not plead guilty unless he does so competently and intelligently." *United States v. Abdulmutallab*, 739 F.3d 891, 899 (6th Cir. 2014) (citing *Godinez v. Moran*, 509 U.S. 389, 396 (1993)). The test for competency is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (*per curiam*). This standard is the same whether the defendant goes to trial or pleads guilty. *Godinez v. Moran*, 509 U.S. at 396–99.

Petitioner alleges that he is bipolar and has a history of clinical depression, attempted suicide, and addiction to alcohol and prescription painkillers. But he has not demonstrated how these conditions rendered him incompetent to plead no contest. In fact, he claimed at the plea proceeding that he understood the plea agreement, the maximum penalties for his crimes, and the rights that he was waiving by pleading no contest. And, at the sentencing two and a half weeks later, defense counsel stated that

Petitioner had accepted responsibility for his actions. Defense counsel also stated that, even though there were "some mental health issues," which counsel did not think were diagnosed, Petitioner had shown "great remorse for this entire chain of events." (Sentencing Tr., 3-4, July 3, 2007.)

These excerpts from the record indicate that Petitioner was able to consult with his lawyer with a reasonable degree of rational understanding and that he had a rational and factual understanding of the proceedings against him. Thus, Petitioner has failed to show that he was incompetent to plead no contest.

He also has failed to show that he was not criminally responsible for his crimes. He stated at his sentencing that he wanted to apologize to the victim, the court, and his family for letting them down. He stated that he should have been a better example, and he asked the court to have mercy on him. (*Id.* at 4.) Petitioner's expression of remorse suggests that there was no basis for arguing that he was not criminally responsible for the crimes.

Petitioner has failed to satisfy the first prong of the *Strickland* test by demonstrating that defense counsel's alleged failure to investigate the facts and ensure that Petitioner was mentally competent amounted to deficient performance. The Court therefore declines to grant relief on claim two.

## C. The Guilty Plea

The third and final habeas claim alleges that Petitioner's no-contest plea was based on inaccurate information and, therefore, was involuntary. In support of this claim, Petitioner alleges that his plea was induced by fear, misapprehension, and ignorance.

**1. Clearly Established Federal Law**

"A guilty or no-contest plea involves a waiver of many substantial rights . . . ." *Fautenberry v. Mitchell*, 515 F.3d 614, 636 (6th Cir. 2008) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). Consequently, a plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The defendant must appreciate the consequences of his waiver of constitutional rights, waive his rights without being coerced to do so, and understand the rights that he is surrendering by pleading guilty or no contest. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) (citing *Brady v. United States*, 397 U.S. at 748-50, and *Fautenberry v. Mitchell*, 515 F.3d at 636-37). Courts must consider all the relevant circumstances when determining whether a plea was voluntary. *Brady v. United States*, 397 U.S. at 749.

**2. Application**

Petitioner was forty-four years old at the plea proceeding on June 15, 2007. He claimed to understand the charges to which he was pleading no contest and the maximum penalty for the crimes. He stated that the prosecutor had accurately set forth the terms of his plea agreement and that nothing more had been promised to him. He claimed to understand the rights that he was waiving by pleading no contest, and he assured the trial court that he was pleading no contest freely, understandingly, and voluntarily. He denied being threatened, compelled, or forced to plead no contest. He stated that it was his choice to plead no contest and that he understood he was giving up any claim that his plea was the result of undisclosed promises or threats or that it was not his own choice to plead no contest.

Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). And even though he states in his affidavit that he feared being convicted and sentenced to life imprisonment, his fear is not a basis for finding that his plea was involuntary. As the Supreme Court explained in *North Carolina v. Alford*, 400 U.S. 25 (1970), "[t]hat he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." *Id.* at 31; *see also Brady v. United States*, 397 U.S. at 751 (declining to hold "that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged").

The record indicates that Petitioner understood the consequences of his plea, that he waived his rights without being coerced to do so, and that he understood the rights he was surrendering. Consequently, his plea was voluntary and lawfully induced, and he has no right to relief on the basis of his third claim.

## IV. CONCLUSION

Petitioner's claims lack merit, and the state courts' rejection of the claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts. Habeas relief, therefore, is not warranted. The Court **DENIES** the petition for a writ of habeas corpus (ECF No. 1).

## V.  DENYING A CERTIFICATE OF APPEALABILITY; GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner may not appeal the denial of his habeas petition unless a district or circuit judge issues a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. at 484.

Reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims debatable or wrong, nor conclude that the issues are adequate to deserve encouragement to proceed further.  The Court therefore declines to grant a certificate of appealability.  Nevertheless, if Petitioner chooses to appeal this decision, he may proceed *in forma pauperis* on appeal, because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

Date: February 28, 2014                           s/John Corbett O'Meara
                                                  United States District Judge